Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

PER CURIAM. Order affirmed, with $10 costs and disbursements on opinion of SPRING, J., in Matter of Flarke (decision in which is handed down herewith) 97 N. Y. Supp. 853.

---

## FINAN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Second Department. March 9, 1906.)

TRIAL—STATEMENTS OF COURT—REPRIMANDING COUNSEL.

Where counsel persisted in reading to the jury portions of a writing which the court had declined to admit in evidence, a statement of the court that "this cannot go any further, you cannot read all of that statement here," was not reversible error.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 80.]

Appeal from Trial Term, Dutchess County.

Action by John Finan against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, GAYNOR, RICH, and MILLER, JJ.

Robert Wilkinson, for appellant.
Charles Morschauser, for respondent.

GAYNOR, J. The chief grievance of the appellant lies in the assertion of its counsel in a separate point in his brief, "That the trial was so conducted as not to give the appellant a full and fair trial." And this is elaborated as follows:

"The court repeatedly, by comment and interjections, construes the evidence, modifies its meaning, tries the plaintiff's case, keeps out dangerous evidence, hampers the defense and shows the jury plainly the court's view of the verdict to be rendered."

The main fault the learned counsel finds with the trial judge is with his rulings and admonitions in respect of an attempt of said counsel to get before the jury the contents of a written statement of an employé of the defendant of what he saw of the accident. It occurred while such employé was being examined as a witness for the defendant, the written statement having been made by him to the defendant a few days after the accident. The learned trial judge excluded it, but said the witness might resort to it to refresh his recollection if he needed to. This did not suit the learned counsel. "That, your honor," said he, "is not what I ask. I ask leave to prove that this statement was then correct and then to offer it in evidence." He then not only excepted to the ruling excluding it, but began reading parts of the statement to the witness to get the contents before the jury in spite of the court's ruling. The learned trial judge was in duty bound to protect the other side from such unfairness, and did so with a forbearance which the law did not exact of him. That he finally said to counsel for the defendant, "This cannot go any further," and "You cannot read all of

that statement here," which are the things complained of, was entirely proper; indeed, he might have fallen short of his duty by saying less, and would not have exceeded it by saying more. He did not prevent counsel from having the witness read all of the statement, or any part of it, to refresh his recollection. If that had been done, and the witness still could not recollect, a question of admitting the paper or some part of it in evidence might have arisen. But no such question was presented. Counsel insisted on reading the statement himself to the witness.

The four other remarks of the learned trial judge which are criticized as unfair are not in the least so. The plaintiff instead of the defendant might consider at least two of them as not favorable to him, especially if he entertained an arrogant or belittling notion of the functions of a trial judge.

The appellant's fault-finding with the trial judge seems to be based on the notion that trial judges in this state are reduced to the humiliating position of having no right to say or do anything in a jury trial except to formally rule in monosyllables on questions presented by counsel; that they may do nothing to guide and control the course of the trial, or to restrain counsel and keep them within bounds and to the point, or even from taking an unfair advantage by prejudicing the jury by false suggestions, and the like. Horne Tooke told Lord Kenyon, before whom he was being sued, that his Lordship's only business was to help the tipstaffs keep order while the jury and counsel tried the case. But that extraordinary personage said it in good humor and altogether reprovingly, and to illustrate the independence of juries on questions of fact, and it was taken in that sense; while the serious and growing disposition of some in this state seems of late to be to actually reduce a trial judge to that position in the trial of civil causes, and leave counsel to do as they please. It would not be well for the administration of justice in this state if that purpose should prevail. When trial by judge and jury is reduced to trial by jury only, the uncertainties in the administration of justice will be increased tenfold. Trial judges in this state are under the law a light and a guide to juries. They may often appropriately even express their opinion on the facts to the jury in civil causes, provided they fairly leave the decision of the questions of fact to the jury, and frequently do so. Massoth v. D. & H. C. Co., 64 N. Y. 534. And juries are not so slavish to the court as seems to be taken for granted in some quarters.

The order granting an extra allowance must be reversed. The case was not a "difficult and extraordinary" one (Standard Trust Co. v. N. Y. C. R. Co., 178 N. Y. 407, 70 N. E. 925), but a commonplace negligence case. I am not able to agree to the proposition, however, that a trial judge lacks power to grant an extra allowance in negligence cases. Some of them are the most difficult and extraordinary that are tried.

The judgment, and the order denying a new trial, are affirmed; the order granting an extra allowance is reversed.

HIRSCHBERG, P. J., and WOODWARD, RICH, and MILLER, JJ., concur in result.